WILLIAM BROWN et al. *v.* STEPHEN ROBERTS.

The surety on a tutor's bond cannot require that payments made by the latter to his ward, shall be imputed to the amount that may be due upon the bond, on a breach of its conditions. The doctrine of imputation of payments does not apply to such a case.

Where the tutor makes a surrender of his property, and the parties in whose favor the bond was executed, consent to, and vote for its sale on terms of credit, such sale is a granting of time, which will have the effect of discharging the liability of the surety.

APPEAL from the District Court of the Parish of East Baton Rouge, *Beale,* J. *A. M. Dunn,* for plaintiffs. *T. G. Morgan,* for defendant and appellant.

MERRICK, C. J. The present action has been brought upon a tutor's bond, signed by the defendant in 1833, as surety for *Moses Brown,* dative tutor to the plaintiffs, then minor children of *William Brown,* deceased.

The bond was given for $1,168. In 1848, the plaintiffs' brought suit against *Moses Brown* for a settlement of the tutorship accounts, and recovered judgment in the sum of $4,785 70. Shortly afterwards, *Moses Brown* made a surrender of his property to his creditors. At the meeting of creditors, the plaintiffs, *William Brown, Octavius Brown,* since deceased, and the plaintiff *George Klinepeter,* representing his wife, voted for the sale of the movables for cash, the slaves one-fourth cash, and for the residue, a credit of one year, and the land on a credit of one and two years.

The heirs of *William Brown* received, on the tableau of distribution of *Moses Brown's* syndic, the sum of fifteen hundred dollars.

Judgment having been rendered against the defendant for the amount of the tutor's bond, $1,168, and legal interest from 19th of February, 1853, he has appealed, and made the following points in this court:

1st. That he has the right to impute the payment made by the syndic to the satisfaction of the bond on which the appellant was surety; and,

2dly. That the appellant was discharged from his obligation as surety, by the acts of plaintiff in according time to *Brown,* the principal obligor.

I. The doctrine of imputation of payments has no application to a tutor's bond in a case like the present. The tutor's bond is collateral to the administration of the tutor during the entire tutorship. So long as the tutor does his duty and makes payment where payment is required, no cause of action arises upon the bond. It would, therefore, be absurd to impute payments to an obligation depending upon a condition which had not happened.

The collateral obligation upon the bond takes effect only where the tutor neglects or refuses to do his duty, or make payment, and it covers the refusal to pay the last dollar to his wards become majors, as well as the first, and where the bond is given for the tutorship of several, to the last minor who arrives at the age of majority as well as the first. All payments made by the tutor or his representatives to all or any of his wards, are but a performance of his obligation of tutor. A refusal to pay any final balance, to all or any of his wards, gives rise to an action upon the bond, for such refusal becomes a breach of a condition of the bond.

Where a tutor, being appointed to several minor heirs, gives but one bond, that bond is as much forfeited by a refusal to pay over to the last minor, arriving at the age of majority, as it would be if the refusal had been made to each heir.

For the breach of a single condition gives rise to an action of indemnity upon the bond, to the extent of the loss, whether that loss be sustained by one or all of the minors. But the surety on the bond can only be held responsible to the extent of the sum specified in it, and if the loss be sustained by several of the heirs, they must adjust between themselves the portions to which they are entitled.

As between the surety and the minors, he cannot contest the right of any one to recover upon the bond to the extent of the indemnity due him. But when the whole bond has once been exhausted, whether by suits *seriatim* upon the same by the minors, as they arrive at the age of majority, or otherwise, the surety is discharged.

II. The second ground made by the appellant, presents some difficulty, as there are contradictory decisions on the very point in controversy. The plaintiffs' counsel relies upon the case of *Leger* v. *Arcenaux*, 5 Rob. 514, decided at Opelousas in 1843, and the defendant, upon the cases of *Lobdell* v. *Nephler*, 4 La. 294; *McGuire* v. *Wooldridge et al.*, 6 Rob. 50; and *Peacocke* v. *Chapman*, 8 An. 87.

The Article of the Code relied upon by defendant, is the opposite of Article 2039 of the Napolean Code, and declares that the prolongation of the term granted to the principal debtor, without the consent of the surety, operates a discharge of the latter. C. C. 3032.

The plaintiffs' counsel relies upon the reasoning of the court in the case of *Leger* v. *Arcenaux*, to the effect, that by the surrender, the claim is no longer upon the debtor, but upon the net proceeds of the sale of the property ceded. And that the sale of the property for cash might have been injurious to the surety &c.

This reasoning is not entirely satisfactory. By the surrender, it is true, that all proceedings against the insolvent are stayed. But the rights of the creditors attach upon the effects surrendered, and the *term* of payment is really prolonged, whenever, on the vote of the creditor, the effects of the debtor are sold on time. For on payment of the principal debt by the surety and subrogation, he could not obtain reimbursement until the credit sales had fallen due. The term then is really prolonged. If the surrender be looked upon simply as a mode of execution, the result would be the same. In the case of *Peacocke* v. *Chapman*, 8 An. 87, the giving of time consisted in consenting to a sale of property seized upon execution upon a twelve month's credit. It was urged in that case, without effect, that the twelve month's sale upon an execution, (being one of the modes of collecting a debt,) did not operate even a novation of the original debt, and could not, therefore, be considered as affecting the contract or prolonging its term.

Suppose, immediately after having procured the sale of the property of the insolvent on time, the plaintiffs had instituted suit upon the bond against the surety, could he not, the surety, say to them, "you seek to bind me under more onerous conditions than my principal, for though you hold a legal mortgage upon the land and slaves to secure this debt, you have virtually deferred its payment for one and two years, and now you demand of me the amount in cash," thus violating Articles 3006, 3030 and 3032 ? It seems to us, there would be much force in the reply, and, on the whole, we think, the case of *Lobdell* v. *Nephler* the best sustained by reason and authority. Still it cannot be disguised, that where a debt was only partly secured, as in this case the creditor would be placed in a a dilemma ; for if he sought to secure the entire debt by procuring favorable

terms of sale, he would lose the security, and if he should suffer the sale for cash, he might lose the portion of the debt not secured, by the sacrifice of the property.

Giving the defendant, however, the benefit of our conclusions on this branch of the case, it will only occasion a small reduction of the judgment. For, as the condition upon which the bond was to become exigible has happened, the indemnity due the remaining ward, must be paid in full, leaving to the plaintiffs to adjust their rights among themselves.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed ; and we do now order, adjudge and decree, that the plaintiffs do have and recover judgment against the defendant for the sum of one thousand and eighty-three dollars and eighteen cents, with legal interest thereon, from the nineteenth day of February, 1853, until paid, and that the plaintiffs pay the costs of appeal, and the defendant those of the lower court.